**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:                                                                          Case No: 8:13-bk-00624-MGW
                                                                                        Chapter 11

Valerie Ann Martin,

      Debtor.
_____/

## MEMORANDUM OPINION ON ABSOLUTE PRIORITY RULE

      In this Memorandum Opinion, the Court adopts the "narrow view" of the applicability of the absolute priority rule in individual Chapter 11 cases following the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act.[1] Under this view, a plan cannot be confirmed unless either a non-accepting class of unsecured creditors will be paid in full or the debtor will not receive or retain any non-exempt pre-petition property under the plan following confirmation. In this case, the Plan filed by the Debtor, Valerie Ann Martin ("Martin"), allows her to keep three investment properties following confirmation even though unsecured creditors are not paid in full. Because this violates the absolute priority rule, confirmation will be denied.

### Background

      Martin filed this individual chapter 11 case on January 18, 2013. As of confirmation, there was a total of $170,531.08 in unsecured claims in this case. Cadles of Grassy Meadows II, LLC ("Cadles") holds $62,987.43—or nearly 40%—of those unsecured claims. Martin proposed a chapter 11 plan that would pay holders of general unsecured claims (Class XIV) a total of $8,500—approximately a 5% distribution.

---

[1] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, § 318, 119 Stat. 23 (2005).

Of the five ballots cast by holders of Class XIV claims, four voted to accept the Plan. So more than half the *number* of allowed claims in Class XIV have voted to accept the Plan. But Cadles, which holds nearly 40% of the *amount* of unsecured claims, did not vote in favor of the plan, and as a consequence, Martin failed to satisfy the requirement that at least two-thirds of the *amount* of each class accept the plan.[2] That means Martin must "cram down" the unsecured (Class XIV) creditors under § 1129(b) to confirm her plan.

Cadles, however, contends Martin cannot confirm her plan under § 1129(b) because the plan provides that she will retain three investment properties following confirmation. During the course of the case, Martin was able to either strip down or strip off mortgages on these investment properties.[3] Martin was also able to successfully negotiate repayment terms with the holders of the stripped-down mortgages that will allow her to continue to rent these properties, service the remaining secured debt, and benefit from any excess cash flow (as well as future appreciation). So the issue before the Court is whether the absolute priority rule codified in § 1129(b)(2)(B) precludes confirmation of a plan in which (i) a dissenting class of unsecured creditors is not being paid in full; and (ii) the debtor will continue to own non-exempt pre-petition property.

**Conclusions of Law**

    A.    Cramdown in Individual Chapter 11 Cases and the Absolute Priority Rule Pre-BAPCPA.

In order for a Chapter 11 plan to be confirmed, the proponent of the plan—typically the debtor—has the burden of establishing the requirements enumerated in § 1129(a)(1)-(16). One of

---

[2] 11 U.S.C. § 1126(c).

[3] 11 U.S.C. § 506(a). Bankruptcy Code § 506(a) provides that a claim "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."

those subsections—§ 1129(a)(8)—requires that each impaired class has accepted the plan.[4] But § 1129(b) contains an alternative to 1129(a)(8).

Under § 1129(b), the Court can still confirm the plan over the objection of an impaired creditor (assuming all of the other requirements of confirmation of § 1129(a) are met) if it is "fair and equitable."[5] This procedure is commonly referred to as "cramdown" because the Court is imposing a plan treatment on an impaired class of creditors—involuntarily—over their objection. Section 1129(b) goes on to provide when a plan is "fair and equitable" with respect to different classes of creditors. With respect to a class of unsecured claims, there are two ways a plan can satisfy the "fair and equitable" requirement.

First, if the plan provides that the holders of claims in the class will receive "property of a value, as of the effective date of the plan, equal to the allowed amount[s]" of their claims, then the vote of the class is not needed.[6] This can be accomplished by either paying the claims in full in cash on the effective date of the plan or, more commonly, by paying the full amount of the claims over time with an interest rate sufficient to pay creditors the present value of the full amount of their claims.

Second, absent full payment, the other alternative for cramdown of a class of unsecured creditors is that the plan does not allow the holder of any claim or interest that is junior to the dissenting class to receive or retain any property on account of the junior claim or interest.[7] This long-standing concept is called the "absolute priority rule" because it recognizes that an owner's

---

[4] 11 U.S.C. § 1129(a) (8).

[5] 11 U.S.C. § 1129(b)(1).

[6] 11 U.S.C. § 1129(b)(2)(B)(i).

[7] 11 U.S.C. § 1129(b)(2)(B)(ii).

interest in property is subordinate to the interests of the owner's creditors.[8] So in a typical Chapter 11 reorganization of a corporation, the corporation's shareholders cannot—absent consent of the unsecured creditors—receive any payment or retain any stock on account of their pre-petition shareholder interests if the plan does not provide for full payment of the unsecured creditors.

Of course, individuals do not have shareholders. So the absolute priority rule with respect to individuals was historically interpreted to preclude individuals from retaining any property if their creditors were not being paid in full under the plan.[9] The one possible exception to this is a debtor's ability to retain exempt property. Although some courts have held that even the retention of exempt property violates the absolute priority rule,[10] the majority (and better reasoned) decisions disagree, concluding that the total liquidation of an individual Chapter 11 debtor's assets is not required in order to satisfy the absolute priority rule.[11]

As Judge Paskay reasoned when considering this issue in *Henderson*, a debtor's interest in *exempt* property can never be "junior" to the interests of creditors (including claims of dissenting unsecured creditors) because unsecured creditors cannot reach exempt property outside of bankruptcy, and exempt property is immune and not subject to liquidation under any of the chapters of the Bankruptcy Code.[12] This conclusion is consistent with the underlying rationale for the absolute priority rule—namely, that an owner's interest in property is

---

[8] *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 115-16 (1939); *Consol. Rock Prods. Co. v. Du Bois*, 312 U.S. 510, 521 (1941) (citing N. Pac. Ry. Co. v. Boyd, 228 U.S. 482 (1913)).

[9] *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 203 (1988).

[10] *See, e.g., In re Yasparro*, 100 B.R. 91, 95 (Bankr. M.D. Fla. 1989).

[11] *See, e.g., In re Henderson*, 321 B.R. 550, 558 (Bankr. M.D. Fla. 2005); *see also In re Gerard*, 2013 WL 4011191,at *4 (Bankr. E.D. Wis. Aug. 7, 2013); *In re Bullard*, 358 B.R. 541, 544-45 (Bankr. D. Conn. 2007).

[12] *In re Henderson*, 321 B.R. at 559-60.

subordinate to the interests of the owner's creditors because of the long-recognized exception to this subordination with respect to exempt property as reflected in various provisions of state and federal law.[13] But other than that issue, application of the absolute priority rule in individual Chapter 11 cases was fairly straightforward before BAPCPA was enacted in 2005. BAPCPA, however, made two amendments to the provisions affecting individual Chapter 11 debtors that have complicated application of the absolute priority rule in individual cases.[14]

      B.      The BAPCPA Amendments Affecting the Absolute Priority Rule for Individual Chapter 11 Debtors.

The first relevant BAPCPA Amendment affecting individual Chapter 11 debtors is that the definition of property of the estate for an individual debtor in Chapter 11 was expanded. Pre-BAPCPA, "property of the estate" was defined under § 541 as including all legal or equitable interests of the debtor in property as of the commencement of the case, as well as the proceeds, rents, or profits from such property, "except such as are earnings from services performed by an individual debtor after the commencement of the case."[15] So simply stated, pre-BAPCPA, property of the estate in the Chapter 11 case of an individual included everything the debtor owned on the date of the petition **but did not include** anything earned by the debtor post-petition.

Under the BAPCPA Amendments, property of the estate now includes, "in addition to the property specified in section 541 . . . earnings from services performed by the debtor after the commencement of the case" in a Chapter 11 case in which the debtor is an individual.[16] So

---

[13] *See, e.g.,* 11 U.S.C. § 522; Chapter 222, Fla. Stat., Art. X, § 4, Fla. Const.

[14] The Court will refer to those amendments as the "BAPCPA Amendments."

[15] 11 U.S.C. § 541(a)(6).

[16] 11 U.S.C. § 1115 (a) (2).

5

simply stated, post-BAPCPA, property of the estate in the Chapter 11 case of an individual includes everything the debtor owned on the date of the petition **plus** anything earned by the debtor post-petition.

The effect of this amendment is to add back "earnings from services" that are otherwise generally excluded from property of the estate under § 541(a)(6). This is consistent with the provisions of Chapter 13, which includes earnings from the debtor's post-petition services within the property of the estate ("in addition to the property specified in section 541") and allows a debtor to remain in possession of such property before confirmation and vests all such property in the debtor upon confirmation of the plan.[17]

The second relevant change resulting from BAPCPA relates to the application of the absolute priority rule codified in § 1129(b)(2)(B)(ii). Recall that under this provision, the holder of any claim or interest that is junior to the claims of an impaired dissenting class cannot retain property on account of that junior interest unless the class is being paid in full under subparagraph (i) of § 1129(b)(2)(B). So the absolute priority rule applied as it has been historically would prohibit an individual Chapter 11 debtor from retaining any property under a plan—even including the post-petition earnings from services. Subparagraph (ii), as amended, now provides an exception to that requirement for individual Chapter 11 debtors, stating that "the debtor may retain property included in the estate under § 1115."[18] The question is: What is the property included in the estate under § 1115? Unfortunately, as with many BAPCPA amendments, the courts are split on how to interpret this new provision.

---

[17] 11 U.S.C. §§ 1306(b), 1327(b).

[18] § 1129(b)(2)(B)(ii).

One line of cases embracing the so-called "broad view" concludes that § 1115 completely replaces § 541 in defining property of the estate for individual debtors in Chapter 11.[19] Viewed broadly, the effect of this interpretation of § 1129(b)(2)(B)(ii) is that the absolute priority rule no longer applies to any property of an individual debtor based upon that provision's reference to "property included in the estate under section 1115."

The majority of cases considering the issue,[20] however, have taken a narrow view and hold that § 1115 simply adds to § 541—a section of general applicability to Chapters 7, 11, 12, and 13[21]—the post-petition "earnings from services" that are generally excluded from the broad definition of property of the estate under § 541(a)(6). Under this interpretation, the absolute priority rule continues to apply in individual Chapter 11 cases, except with respect to post-petition earnings from services. Thus, under the narrow view, an individual debtor may not keep any property (with the exception of exempt property) of the estate that the individual owned on the date of the petition and confirm a plan over the objection of an impaired class of unsecured

---

[19] *Friedman v. P+P, LLC (In re Friedman)*, 466 B.R. 471, 482-83 (9th Cir. BAP 2012); *SPCP Grp., LLC v. Biggins*, 465 B.R. 316, 322-23 (M.D. Fla. 2011) (affirming unpublished decision of this bankruptcy court); *In re Shat*, 424 B.R. 854, 865-68 (Bankr. D. Nev. 2010); *In re Johnson*, 402 B.R. 851, 852-53 (Bankr. N.D. Ind. 2009); *In re Roedemeier*, 374 B.R. 264, 275-76 (Bankr. D. Kan. 2007); *In re Tegeder*, 369 B.R. 477, 479-80 (Bankr. D. Neb. 2007).

[20] *See, e.g., In re Lively*, 717 F.3d 406, 409 (5th Cir. 2013); *Dill Oil Co., LLC v. Stephens (In re Stephens)*, 704 F.3d 1279, 1286-87 (10th Cir. 2013); *In re Maharaj*, 681 F.3d 558, 568-69 (4th Cir. 2012); *In re Lee Min Ho Chen*, 482 B.R. 473, 481-82 (Bankr. D.P.R. 2012); *In re Arnold*, 471 B.R. 578, 588-89 (Bankr. C.D. Cal. 2012); *In re Borton*, 2011 WL 5439285, at *4 (Bankr. D. Idaho Nov. 9, 2011); *In re Lindsey*, 453 B.R. 886, 903 (Bankr. E.D. Tenn. 2011); *In re Kamell*, 451 B.R. 505, 512 (Bankr. C.D. Cal. 2011); *In re Draiman*, 450 B.R. 777, 821-22 (Bankr. N.D. Ill. 2011); *In re Walsh*, 447 B.R. 45, 48 (Bankr. D. Mass. 2011); *In re Karlovich*, 456 B.R. 677, 680-81 (Bankr. S.D. Cal. 2010); *In re Gelin*, 437 B.R. 435, 441 (Bankr. M.D. Fla. 2010); *In re Steedley*, 2010 WL 3528599, at *2-3 (Bankr. S.D. Ga. Aug. 27, 2010); *In re Mullins*, 435 B.R. 352, 360-61 (Bankr. W.D. Va. 2010); *In re Gbadebo*, 431 B.R. 222, 228-30 (Bankr. N.D. Cal. 2010); *see also In re Friedman*, 466 B.R. at 476 (discussing the bankruptcy court's determination—in an unpublished February 17, 2011 order—that the absolute priority rule applies to individual Chapter 11 debtors).

[21] 11 U.S.C. § 103 (providing that chapters 1, 3, and 5 of this title apply in a case under Chapter 7, 11, 12, or 13 of this title).

creditors unless that class is paid in full in compliance with the alternative provision contained in § 1129(b)(2)(B)(i).

Because Martin's Plan in this case does not provide for full payment of unsecured creditors, it can only be confirmed if the Court adopts the broad view of the absolute priority rule in individual cases. The Court declines to do so. For the reasons set forth below, the Court concludes that the BAPCPA Amendments did not abrogate the absolute priority rule and that the narrow view is better reasoned.

But before discussing the basis for this Court's conclusions, it is appropriate to discuss a prior decision of this Court in the case of *SPCP Grp., LLC v. Biggins*, as well as the District Court's affirmance of that decision, in which this Court appears to have adopted the broad view of the BAPCPA Amendments. [22]

The District Court's decision affirming this Court's oral ruling in *Biggins* is often cited as a case adopting the broad view. It is worth noting that these decisions were rendered at a time when there was no circuit authority addressing the post-BAPCPA application of the absolute priority rule in individual Chapter 11 cases. Since the *Biggins* rulings, three circuit courts have dealt with the issue; all have adopted the narrow view and concluded that the absolute priority rule continues to apply in individual debtor cases. [23]

---

[22] *SPCP Grp., LLC v. Biggins*, 465 B.R. 316 (M.D. Fla. 2011). *Biggins* involved five jointly administered cases of the Biggins family members who were the owners of the Cypress Creek Assisted Living Residence, Inc., an assisted living facility in Sun City, Florida, that had been a debtor in a prior Chapter 11 case. They were also guarantors of the debt held by SPCP Group, LLC, the holder of the mortgage on the Cypress Creek facility. The Court had previously confirmed the plan of reorganization in Cypress Creek's case. The order confirming the Cypress Creek plan was affirmed by the district court in *SPCP Group, LLC v. Cypress Creek Assisted Living Residence, Inc., (In re Cypress Creek),* 434 B.R. 650, 660 (M.D. Fla. 2010) ("Cypress Creek").

[23] *In re Lively*, 717 F.3d at 409 (Fifth Circuit); *In re Stephens*, 704 F.3d at 1286-87 (Tenth Circuit); *In re Maharaj*, 681 F. 3d at 568-69 (Fourth Circuit); *but see In re Friedman*, 466 B.R. at 482-83 (Ninth Circuit BAP).

More importantly, the Court's decision in *Biggins* did not depend on either the narrow or broad view of the absolute priority rule. That is because § 1129(b)(2)(B) contains two independent and alternative means by which a plan can be confirmed over the objection of an impaired class of unsecured creditors. One of these is through compliance with the absolute priority rule, as has been discussed in this opinion.[24] The other alternative is by proposing a plan that provides that creditors in the dissenting class receive on account of their claims property of the value, as of the effective date of the plan, equal to the allowed amount of the claim.[25]

And that is exactly what the plan in *Biggins* provided. Under the debtor's plan in the *Biggins* case, the dissenting creditor was to be repaid 118% of its claim under the Chapter 11 plan previously confirmed by this Court in the *Cypress Creek* case.[26] In fact, the District Court noted this distinction when it declined to follow *Gelin,* a previous case from the Middle District of Florida that adopted the narrow view.[27] Consequently, consideration of the absolute priority rule in the context of a plan that paid the dissenting class in full was not necessary to either this Court's decision on confirmation of the *Cypress Creek* case or to the District Court's affirmance of that decision. It is, therefore, dicta.

    C.    This Court Adopts the Narrow View.

The case law dealing with the issue before the Court has developed substantially in the last year-and-a-half. As noted, the three circuit courts that have recently weighed in on the issue have all concluded that the BAPCPA Amendments did not abrogate the absolute priority rule in

---

[24] 11 U.S.C. § 1129(b)(2)(B)(ii).

[25] 11 U.S.C. § 1129(b)(2)(B)(i).

[26] *Cypress Creek,* 434 B.R. at 660. The repayment of 118% results from payment in full of the principal balance owed to SPCP, plus interest at 5.25%. The District Court in *Cypress Creek* affirmed this Court's finding that the terms provided for in the *Cypress Creek* plan provided for full payment of SPCP's claim. *Id.* at 659-660.

[27] *Biggins*, 465 B.R. at 321-23 (declining to follow *In re Gelin*, 437 B.R. 435 (Bankr. M.D. Fla. 2010)).

9

cases involving individual debtors.[28] This Court finds persuasive the reasoning of these opinions principally because: (1) the plain meaning of the language of the BAPCPA Amendments supports the narrow view, (2) repeal by implication and abrogation of long-standing legal principles is disfavored, (3) the narrow view is consistent with overall congressional intent in enacting BAPCPA, and (4) the BAPCPA amendments simply harmonize the treatment of individual Chapter 11 debtors with the treatment of individual Chapter 13 debtors. Each of these reasons will be discussed in turn below.

      1.    *The Plain Meaning of the BAPCPA Amendments Supports the Narrow View.*

Any interpretation of the Bankruptcy Code must necessarily start with the language of the statute itself.[29] Section 1129(b)—the cramdown provision—provides that:

> the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115*, subject to the requirements of subsection (a)(14) of this section.[30]

Section 1115, which deals with property of the estate for individual Chapter 11 debtors, provides:

> In a case in which the debtor is an individual, *property of the estate includes, in addition to the property specified in section 541… earnings from services performed by the debtor after the commencement of the case.*"[31]

---

[28] *In re Lively*, 717 F.3d at 409 (Fifth Circuit); *In re Stephens*, 704 F.3d at 1286-87 (Tenth Circuit); *In re Maharaj*, 681 F. 3d at 568-69 (Fourth Circuit).

[29] *Ransom v. FIA*, 131 S. Ct. 716, 723 (2011) (setting forth standard for interpreting BAPCPA amendments).

[30] 11 U.S.C. § 1129(b)(2)(B)(ii).

[31] 11 U.S.C. § 1115(a)(2) (emphasis added).

We start our "plain meaning" analysis with the amendment to § 1129(b)(2)(B)(ii), which simply states "except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115."[32] "Included" in this context means "to take in."[33] So we next look to §1115 to see what was "taken in" to property of the estate by that section. The property that § 1115 takes in is "in addition to the property specified in § 541."[34] As used in this phrase, "in addition" means "over and above."[35] We then find that § 1115 "includes"—i.e., takes into—the property of the estate "over and above" the property already "specified in section 541." And that property is "earnings from services performed by the debtor after the commencement of the case."[36]

This interpretation is consistent with the grammatical structure of § 1115. The prepositional phrase "in addition to the property specified in section 541" is an adverbial phrase[37] that modifies the verb "includes" and explains to what extent the property of the estate is added to the § 541 property by § 1115(a). And the property that is added by § 1115 is post-petition property and earnings from services under § 1115(a)(1) and (2).[38]

---

[32] 11 U.S.C. § 1129(b)(2)(B)(ii).

[33] Merriam-Webster On-Line Dictionary, available at http://www.merriam-webster.com/dictionary/include.

[34] 11 U.S.C. § 1115(a)( providing that "[i]n a case in which the Debtor is an individual, property of the estate includes, in addition to the property specified in section 541").

[35] *In re Arnold*, 471 B.R. 578, 599 (Bankr. C.D. Cal. 2012) (citing *American Heritage Dictionary of the English Language* at 887).

[36] 11 U.S.C. § 1115(a)(2); *see also In re Lively*, 717 F.3d 406, 410 (5th Cir. 2013) (citing *In re Seafort*, 669 F.3d 662 (6th Cir. 2012) (interpreting similar provision—11 U.S.C. § 1306(a)).

[37] A "prepositional phrase" is two or more words—including a preposition—showing the relationship between the subject of the preposition and another part of the sentence. A "prepositional phrase" can modify a verb. *See* http://grammar.about.com/od/pq/g/ prephraseterm.htm. When a "prepositional phrase" modifies a verb, it is referred to as an "adverbial phrase."

[38] *In re Arnold*, 471 B.R. at 602.

Based on this analysis, the Court concludes that the "property specified in § 541" is not the property added under § 1115 that the debtor may keep under the exception to the absolute priority rule now contained in § 1129(b)(2)(B)(ii). The property that is added by § 1115 is limited to the earnings from post-petition services described in § 1115(a)(2). And that is the property excepted from the absolute priority rule by the amendment to § 1129(b)(2)(B)(ii). As to other property, the absolute priority rule continues to apply as it did before the BAPCPA Amendments.

In reaching this conclusion based upon the plain meaning of the BAPCPA Amendments, the Court notes that other courts that have considered these provisions are split on whether the language is ambiguous and susceptible to alternative constructions.[39] Although this Court finds no ambiguity in this language, it is nevertheless helpful to confirm this Court's adoption of the narrow view by reviewing principles of statutory construction, congressional history, and the overall effect and purpose of these amendments.

    2.    *Abrogation of Longstanding Legal Principles is Disfavored.*

In *Hamilton v. Lanning*, the Supreme Court, in interpreting another BAPCPA amendment, reminds us that "we will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure."[40] The concept that the rights of the owners of property are subordinate to the rights of the owner's creditors as embodied in the absolute priority rule has been a fundamental part of bankruptcy jurisprudence for over 100 years.[41]

---

[39] *Compare In re Lively,* 717 F.3d at 409 (holding that "narrow interpretation is unambiguous and correct") *with In re Stephens,* 704 F.3d 1279 (holding that "we agree with the Fourth Circuit that 'either construction is plausible'") (quoting *In re Maharaj,* 681 F.3d 558, 569 (4th Cir. 2012)).

[40] 130 S. Ct. 2464, 2474 (2010).

[41] *N. Pac. Ry. Co. v. Boyd*, 228 U.S. 482, 502 (1913).

If Congress wanted to abrogate the absolute priority rule—one of the bedrocks of bankruptcy jurisprudence for many decades—it could have done so directly rather than by implication. And Congress could easily have done so by simply exempting individual debtors in the language of § 1129(b)(2)(B)(ii).[42] Because repeals by implication of such fundamental rights are disfavored,[43] the Court concludes the BAPCPA Amendments did not make the absolute priority rule inapplicable to individual Chapter 11 debtors.

        3.    *The Narrow View is Consistent with the Overall Congressional Intent in Enacting BAPCPA.*

As the Supreme Court stated in *Ransom,* "Congress enacted [BAPCPA] to correct perceived abuses of the bankruptcy system."[44] And as the Tenth Circuit Court of Appeals recognized in *Stephens*, it is clear that a key congressional purpose in passing BAPCPA was to impose greater burdens on individual Chapter 11 debtors to curb the abusive practices of some unscrupulous debtors and to ensure debtors who could afford to pay creditors would do so to the maximum extent feasible.[45] As a result, the new provisions consistently appear designed to impose greater burdens on individual debtors' rights so as to ensure greater payout to creditors.[46]

At the heart of this, a means test was adopted in consumer Chapter 13 cases to "help ensure that debtors who can pay creditors do pay them."[47] And a corresponding provision was

---

[42] *In re Stevens*, 704 F.3d at 1286.

[43] *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007).

[44] *Ransom v. FIA*, 131 S. Ct. 716, 721 (2011) (quoting *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231-32 (2010)).

[45] *In re Stevens*, 704 F.3d at 1286 (citing *In re Gbadebo*, 431 B.R. 222, 229-30); *see also* H.R. Rep. No. 109–31, pt. 1, at 2–5, 80–81.

[46] *In re Stevens*, 704 F.3d at 1286 (citing *In re Gbadebo*, 431 B.R. 222, 229-30); *see also* H.R. Rep. No. 109–31, pt. 1, at 2–5, 80–81.

[47] *Ransom*, 131 S. Ct. at 721.

enacted for individual Chapter 11 cases providing that a proposed plan must do one of two things if a creditor objects to confirmation: either pay unsecured claims in full or the debtor must devote all of the debtor's disposable income over a five-year period to payments of claims.[48]

Given this backdrop of clear congressional intent, why would Congress abrogate the absolute priority rule for individual debtors as suggested by the courts following the broad view? Abrogating the absolute priority rule would create the remarkable result that creditors would be denied a vote in Chapter 11 cases of individuals who could pay pennies on the dollar while keeping substantial assets—a result never contemplated for Chapter 11. The answer to this question is that there was no such congressional intent to allow this result. The absolute priority rule was left intact in individual cases by the BAPCPA Amendments (with a slight clarification to harmonize the treatment of post-petition income with the treatment for such income in Chapter 13 cases as will be discussed in the following section).

> 4. *The BAPCPA Amendments Harmonized the Treatment of Individual Chapter 11 Debtors with the Treatment of Individual Chapter 13 Debtors.*

It appears to the Court that the underlying rationale for enactment of the BAPCPA Amendments is fairly simple. Many individuals file Chapter 11 cases because they do not qualify for Chapter 13 because of the debt limitations contained in § 109(e). Under Chapter 13, a debtor must commit the debtor's post-petition disposable income to payment of creditors' claims. The purpose of the BAPCPA amendment to § 1115 was to harmonize the treatment of individual debtors in Chapter 11 with those in Chapter 13.[49]

---

[48] 11 U.S.C. § 1129(a)(15).

[49] *In re Lively*, 717 F.3d 406, 409 (5th Cir. 2013).

This harmonization is achieved by adding back to "property of the estate"—as broadly defined in § 541—the property that would otherwise have been excluded under § 541(a)(6).[50] But once the post-petition property was added back to the estate under the amendment to § 1115, the absolute priority rule had to be modified so that the debtor would not have to give up all post-petition earnings as the price for electing a cramdown.[51] This is consistent with Chapter 13.

## Conclusion

Under Martin's proposed Plan, holders of unsecured claims will not be paid in full; this class has not accepted the Plan treatment; and the Plan provides that Martin will retain non-exempt investment properties. Since the absolute priority rule still applies in individual Chapter 11 cases, the Plan fails to satisfy § 1129(b)(2)(B)(ii). Accordingly, the Court will, by separate order, deny confirmation of the Plan.

September 17, 2013

**DATED** in Chambers at Tampa, Florida, on _____.

_____
Michael G. Williamson
United States Bankruptcy Judge

**Michael C. Caborn, Esq.**
**Winderweedle, Haines, Ward**
  **& Woodman, P.A.**
*Counsel for Cadles of Grassy Meadows II, LLC*

**Buddy D. Ford, Esq.**
**Buddy D. Ford, P.A.**
*Counsel for Debtor*

---

[50] 11 U.S.C. § 541(a)(6) (providing that property of the estate includes post-petition rents and profits from property of the estate "except such as are earnings from services performed by an individual debtor after the commencement of the case").

[51] *In re Lively*, 717 F.3d at 409 (citing *In re Kamell*, 451 B.R. 505, 511 (Bankr. C.D. Cal. 2011)).

Service Instructions: Attorney Michael C. Caborn is directed to serve a copy of this memorandum opinion on interested parties and file a proof of service within 3 days of entry of the opinion.